UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF an Apple iPad, CURRENTLY LOCATED at the Anchorage Airport Interdiction Team office located at 5000 W International Airport Rd, Anchorage, AK 99502 within the Ted Stevens International Airport | Case No. 3:19-MJ-00539-MMS |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jared Lonborg, United States Postal Inspector, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant authorizing the examination of

property—**one (1) Apple iPad**—which is currently in law enforcement possession, and

the extraction from that property of electronically stored information described in

Attachment B.

2.      I am a United States Postal Inspector, assigned to investigate the unlawful

transportation of contraband, including Title 21 controlled substances, through the United

States Mail.

NOV 1 9 2019

1

3.     I have been a Postal Inspector since August 2015 and I am currently assigned to the Seattle Division of the United States Postal Inspection Service (USPIS), specifically to the Anchorage Domicile, which is responsible for the investigation of controlled substance law violations involving the United States Mail.

4.     As part of my duties as a U.S. Postal Inspector, I investigate drug trafficking organizations, including their smuggling routes and the techniques that they use for transporting controlled substances such as marijuana, cocaine, methamphetamine, and heroin. My duties include investigating drug trafficking organizations, interviewing witnesses, victims and suspects, identifying people involved, developing probable cause for cases, handling and processing various types of evidence, and assembling cases for prosecution. I have conducted and/or participated in numerous investigations relating to the use, possession, manufacture, and trafficking of controlled substances, and I have become familiar with devices, paraphernalia, techniques, and practices used by people engaged in the use, possession, manufacture, and trafficking of controlled substances. I have also conducted and/or participated in investigations which have resulted in the seizure of marijuana, cocaine hydrochloride, opium, heroin, methamphetamine, MDMA (ecstasy), prescription medications, firearms, cellular phones, surveillance systems, cameras, memory cards, computers, documents, money, and precious metals. I have also conducted numerous interviews of people involved in the use, possession, manufacture, and trafficking of controlled substances which have added to my knowledge of the illegal drug culture that exists in Alaska.

NOV 1 9 2019

5.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched consists of an Apple iPad, herein referred to as the "**Subject Device.**" The **Subject Device** is currently located at the Anchorage Airport Interdiction Team office located at 5000 W International Airport Rd, Anchorage, AK 99502 within the Ted Stevens International Airport and are secured in AST evidence storage.

7.     The applied-for warrant would authorize the forensic examination of the **Subject Device** for the purpose of identifying the electronically stored data particularly described in **Attachment B**.

## PROBABLE CAUSE

8.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code Sections 846 and 841, the Distribution of Controlled Substances, the Possession of Controlled Substances with Intent to Distribute, as well as the conspiracy to commit those violations, and Title 18, United States Code Sections 1956 and 1957, Money Laundering, and conspiracies to do the same and aiding and abetting the same have been committed and that the items described in **Attachment A** are evidence, fruits, instrumentalities, and proceeds of those violations are located at the location described in the accompanying

3

NOV 1 9 2019

search warrant. There is also probable cause to search the information described in **Attachment A** for evidence, instrumentalities, contraband or fruits of these crimes further described in **Attachment B**.

9.     The **Subject Device** is currently in the lawful possession of the Anchorage Airport Interdiction Team, specifically the Alaska State Troopers (AST). The **Subject Device** came into AST's possession in the following way: The **Subject Device** was taken during the execution of a search warrant which was obtained for a blue in color Samsonite carry-on sized roller-bag which BURNO had in his possession at the time of his arrest at the Ted Stevens International Airport on November 6, 2019. The **Subject Device** was found inside the roller-bag.

10.     The **Subject Device** is currently in storage at the Anchorage Airport Interdiction Team office located at 5000 W International Airport Rd, Anchorage, AK 99502 within the Ted Stevens International Airport and are logged into AST evidence. In my training and experience, I know that the **Subject Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Device** first came into the possession of the AST.

### AGENT'S EXPERTISE

11.     Based upon my training, experience and participation in these and other financial/drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

4

NOV 1 9 2019

a. I know that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, such as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money. Such records may be found in the form of **text messages on cell phones, or emails on targets' computers, tablets, digital cameras or other portable media devices, or smart phones.**

b. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession, sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned records are frequently maintained in the drug trafficker's residence and sometimes in the traffickers'

5

NOV 1 9 2019

vehicle(s), **computers, tablets, smart phones, digital cameras or other portable media devices**.

c. I know that evidence of excessive wealth is probative evidence of crimes involving greed, to include the distribution of controlled substances. Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets themselves are evidence of drug trafficking. I also know that drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in or about their residences, and sometimes in their vehicles, businesses, **smart phones, tablets, computers or portable media devices.**

d. It is increasingly common for members of drug trafficking organizations to utilize direct cash deposits into a co-conspirator's bank accounts to facilitate the movement of U.S. currency throughout the trafficking organization's area of operations. I know that members of drug trafficking organizations will utilize nominee depositors to disguise the origination of the funds and to break up the amount being deposited by any one person. I know that the actual owner of the currency will commonly provide the nominee depositor with handwritten information concerning the intended recipient's name and account number and amounts of money to be deposited. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee depositors to maintain copies of the deposit slips. I also know that the aforementioned items are frequently maintained in the drug trafficker's

6

NOV 19 2019

and/or nominee depositor's residence, businesses, or vehicles. In addition, drug traffickers can keep such records on their **smart phones, tablets, computers, or portable media devices.**

e. It is common for members of drug trafficking organizations to utilize fraudulent identification in order to purchase airline tickets, send wire transfers, rent residences and storage facilities, and subscribe for telephone/cellular telephone service. I also know that it is common for drug traffickers to keep fraudulent identification nearby and easily accessible to facilitate their flight upon the discovery of their illegal activities by law enforcement. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence, businesses, or vehicles. Records concerning the purchase of airline tickets, rental contracts, and telephone/cellular service are frequently found on the **smart phones, tablets, computers, or portable media devices.**

f. It is common for drug trafficking organizations involved in the distribution of controlled substances to maintain equipment and supplies (i.e. scales, baggies, cutting agents) on hand over a lengthy period of time. At times, certain retail stores provide customers with loyalty cards that can track a customer's purchases. Frequently, these stores send emails to the members of their loyalty programs that can be found on drug traffickers' **computers, tablets, and smart phones.**

7

g. It is common for members of drug trafficking organizations to attempt to recruit couriers to transport drugs and/or U.S. currency throughout the trafficking organization's area of operations. I know that often times a courier's handler will provide the courier with handwritten notes regarding travel itinerary, hotel information, and contact telephone numbers prior to the courier's departing on the trip to transport drugs and/or money. I also know that oftentimes organizations will pay a flat rate (i.e. $1,000 per kilogram of cocaine) plus expenses for the couriers. Therefore, oftentimes the couriers will keep handwritten itemized lists of expenses and/or receipts, in order to be reimbursed. I also know that the aforementioned items are frequently maintained in the couriers' residence or residences and vehicles belonging to members of the drug trafficking organization. In addition, records of airline and hotel purchases are frequently found in email on drug traffickers' **smart phones, tablets, computers, digital cameras or other portable media devices.** Evidence of visiting travel websites can often be found through forensic analysis of these devices.

h. It is common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and their co-conspirators and associates. It is also common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and/or their co-conspirators with controlled substances, large sums of money, guns and expensive assets (i.e. jewelry, luxury cars). I also know

8

NOV 19 2019

that the aforementioned items are frequently maintained in drug traffickers' residences or businesses, or in their **computers, tablets, smart phones, digital cameras and other portable media devices.**

i.  It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use pre-paid cellular telephones and pre-paid long distance calling cards. I know that oftentimes the only way to connect a subject with a particular pre-paid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence. Analyses of these pre-paid cellular phones often provide evidence of a drug trafficker's customers and suppliers, as well as accomplices. This information typically can be found in the address books, call logs and text messages of **wireless cellular telephones, smart phones, computers, tablets and portable media players.**

j.  It is common for members of a drug trafficking organization to attempt to legitimize their profits from the distribution of drugs. To accomplish these goals, drug traffickers utilize foreign and domestic banks and the bank's attendant services to include cashier's checks, safe deposit boxes, and money drafts. Drug traffickers will also utilize the purchase/sale of real estate to legitimize their profits. I also know that the records of the aforementioned transactions are frequently maintained in the drug trafficker's residence, business, or vehicles, and also stored on computers, **portable media devices,** and tablets of drug traffickers.

9

NOV 19 2019

k. It is common for members of drug trafficking organizations to utilize businesses, both real and fictitious, to conceal both the distribution of drugs as well as to conceal the source of their illegal income. It is common for drug traffickers to possess business licenses and articles of incorporation for these businesses, even if the businesses exist only on paper. I also know that these records and documents are frequently maintained in the drug trafficker's residence or business, as well as on drug traffickers' computers, **portable media devices**, and tablets.

l. In my experience, I have found that the same information or data can be restored/recovered from a forensic examination of a computer as you will find following an examination of portable media devices such as thumb drives, removable hard drives, or even digital cameras. This rationale is true mainly because devices such as thumb drives and removable hard drives are commonly used to save computer internal hard drive space and the data or information maintained within is more commonly pulled from a computer to begin with. For instance, while digital cameras provide the ability to back up documents, records, or lists upon their own built in media storage space.

m. The statutory provisions to which the current investigation relates include; (1) Title 21, United States Code, Section 846, 841(a)(1) and (b)(1)(A), the Distribution of Controlled Substances, the Possession of Controlled Substances with Intent to Distribute, as well as the conspiracy to commit those violations, and (2) Title 18 United States Code Sections 1956 and 1957, Money

10

NOV 1 9 2019

Laundering, and conspiracies to do the same and aiding and abetting the same. I am familiar with the provisions of these statues and based upon my training and experience, I believe that the data described in this affidavit and which is sought by this application for search warrant is evidence of violations under Title 21, United States Code, Section 846, 841(a)(1) and (b)(1)(A) and Title 18, United States Code, Sections 1956 and 1957.

## BACKGROUND OF INVESTIGATION

12.    On November 4, 2019, USPIS in Anchorage, AK executed federal search warrant 03:19-MJ-00518-MMS on Priority Mail Express parcel EL462158058US (herein referred to as the Subject Parcel) addressed to "Todd Brown, 216 Skwentna DR., Anchorage, AK 99504" from "D. Rheinschild, 4326 W. 142 ST #10, Hawthorne, CA 90250." Inside the parcel was approximately 3,816.62 gross grams of a white crystalline substance which field tested positive for methamphetamine. Based on my training and experience, this amount of methamphetamine is indicative of a distribution quantity based off of a single dosage unit typically ranging from 50-100 milligrams or more, depending on how it is ingested.

13.    Further investigation revealed that the Subject Parcel was linked to a prior investigation that the Anchorage Airport Interdiction Team was involved with in July of 2019, in which Peter Michael BURNO, an Alaska resident, was obtaining controlled substances at the pound or higher level from California. BURNO obtained these controlled substances in multiple ways, including using parcel shipping services to have them sent to Alaska and by traveling to California to obtain controlled substances in

11

NOV 1 9 2019

person. Law enforcement in California seized a parcel containing approximately three pounds of controlled substances which BURNO was suspected of shipping.

14.    On November 4, 2019, I determined through the research of postal databases that phone number 907-202-0091 requested SMS text message updates to track the Subject Parcel. I conducted further research on this phone number and determined the phone number is registered to BURNO.

15.    On November 5, 2019, federal beeper order 03:19-MJ-00522-MMS was signed, authorizing the installation and monitoring of an electronic alerting device and electronic tracking device in the Subject Parcel and recovery of these devices by entry to the premises where the Subject Parcel is opened.

16.    On November 5, 2019, a controlled delivery was conducted of the Subject Parcel at the recipient's address in which the seized narcotics were removed and a representative sample of the methamphetamine was placed inside of the Subject Parcel.

17.    On November 5, 2019, at approximately 2:25 PM, the Subject Parcel was delivered to the recipient address of 216 Skwentna Dr, Anchorage, AK 99504 by an agent acting in an undercover capacity. Two males in a vehicle were waiting at the address and immediately took possession of the Subject Parcel. Law enforcement then followed these individuals to an address in Wasilla, AK, at which time law enforcement received a signal from the electronic monitoring device installed in the Subject Parcel indicating the Subject Parcel had been opened inside of the residence. Law enforcement executed the federal beeper order and subsequently applied for and was granted a search warrant for the address and the vehicle that transported the Subject Parcel to this residence. Several

12

suspects were taken into custody at this location for further questioning. The Subject Parcel was discovered open on the kitchen floor of the residence. In Addition, a scale was found on the kitchen counter within several feet of the Subject Parcel and multiple firearms were recovered during a search of the residence.

18. On November 5, 2019, law enforcement reviewed text messages and communications between BURNO and other individuals involved in the investigation, which indicated the individual who accepted the Subject Parcel was retrieving the Subject Parcel for BURNO because he was in California making inquiries about the Subject Parcel since it was not delivered on time.

19. On November 6, 2019, BURNO traveled from Los Angeles, CA to Anchorage, AK. He was taken into custody by law enforcement upon his arrival at the Ted Stevens International Airport.

20. During a post-arrest interview, BURNO stated he recently moved into 216 Skwentna Dr., Anchorage, AK 99504. BURNO was also found to have a key to the front door to this residence in his possession at the time of his arrest.

21. On November 6, 2019, a search warrant was obtained and executed by law enforcement on BURNO's residence of 216 Skwentna Dr., Anchorage, AK 99504.

22. As a result of the search warrant served on BURNO's residence, law enforcement found a laminated identification card for BURNO, two scales with white powdery residue, and an empty USPS Priority Mail Express parcel. The empty USPS parcel still had the USPS Priority Mail Express shipping label affixed to it. On the label was the same return address and name that was listed on the Subject Parcel and both

13

NOV 1 9 2019

parcels had an identical phone number listed on the label. The parcel found at 216 Skwentna Dr. was also similar in weight and had noticeably similar handwriting as the Subject Parcel. The parcel was mailed on October 21, 2019 from Inglewood, CA and addressed to 2841 Leawood Dr., Anchorage AK 99502. BURNO stated in his interview with law enforcement that he used to live at this address. Law enforcement also determined BURNO's vehicle is registered to 2841 Leawood Dr., Anchorage AK 99502.

23.     On November 6, 2019, the **Subject Device** was taken during the execution of a search warrant which was obtained for a blue in color Samsonite carry-on sized roller-bag which BURNO had in his possession at the time of his arrest at the Ted Stevens International Airport on November 6, 2019. The **Subject Device** was found inside the roller-bag.

24.     Based on my training and experience as a Postal Inspector, and involvement in this investigation, your affiant knows that drug traffickers commonly use cellphones and/or other electronic communication devices to communicate and facilitate the distribution of controlled substances. These devices are their primary means of communication. Electronic devices used by drug traffickers and associates frequently contain evidence regarding the dates and times of criminal associates' visits, purchasing narcotics, and contacts. Electronic devices often contain evidence of the sale of illegal substances, their location of the sale and other evidence pertinent to this investigation.

25.     Based on the information provided herein, I submit there is probable cause to search the **Subject Device**.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14

NOV 1 9 2019

26.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27.     *Forensic Evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information

NOV 1 9 2019

about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when they were used.

d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when it was used, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject**

16

NOV 1 9 2019

**Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

30.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Device** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

Jared Lonborg, U.S. Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me
on November 19, 2019:

UNITED STATES MAGISTRATE JUDGE

MATTHEW M. SCOBLE
U.S. Magistrate Judge

17